UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN THE MATTER OF            )
                            )
THE EXTRADITION OF          )         Misc. No. 23-MC-61413-UNA
                            )
RODNEY MERVYN NICHOLS       )
_____)

**OPPOSED MOTION FOR REASONABLE BOND
PENDING EXTRADITION PROCEEDINGS**

Mr. Rodney Mervyn Nichols, by and through undersigned counsel, hereby respectfully requests that this Court set a reasonable bond for his release pending the extradition proceedings before this Court. Mr. Nichols is an 81 year-old, wheelchair-bound senior suffering from the full onset of dementia. Prior to his arrest on the extradition request from Canada, Mr. Nichols was living in an assisted living facility in Hollywood, Florida. Despite the serious charges against Mr. Nichols, Mr. Nichol's advanced age and his deteriorating mental and physical conditions present special circumstances and make it abundantly clear that Mr. Nichols is neither a threat to flee nor a threat to the safety of anyone in the community. The Federal Detention Center is no place for someone with Mr. Nichol's frailties and vulnerabilities. Mr. Nichols should be allowed to return to his assisted living facility while the issues resulting from the extradition request are resolved.

Federal statutes governing international extradition proceedings do not expressly address the issue of bail pending a determination on an extradition request.

1

*See* 18 U.S.C. § 3181, *et seq.* However, federal courts have a long-standing legal tradition of allowing bail pending a determination on an extradition request. *See Wright v. Henkel*, 190 U.S. 40, 63, 23 S. Ct. 781, 787, 47 L. Ed. 948 (1903); *Martin v. Warden*, 993 F.2d 824, 827 (11th Cir. 1993). Traditionally, a movant seeking bail pending an extradition hearing must demonstrate "special circumstances" before bail will be granted. *Id.*; *see also In re Extradition of Ghandtchi*, 697 F.2d 1037, 1038 (11th Cir. 1983). Courts have also addressed requests for bail pending an extradition hearing under the traditional bail standard of whether the movant is a flight risk. *See Matter of Extradition of Nacif-Borge*, 829 F. Supp. 1210 (D. Nev. 1993) (movant was able to demonstrate no risk of flight based on nature of charges against him, lack of a criminal record, ties to community and fact that strongest ties were to demanding country); *United States v. Taitz*, 130 F.R.D. 442 (S.D. Cal. 1990) (pending an extradition hearing, movant not a flight risk pending extradition determination); *see also Martin*, 993 F.2d at 827 n.4 (noting call from commentators that bail decision for extraditions cases be made solely on risk of flight); John G. Kester, *Some Myths of United States Extradition Law*, 76 Geo. L. J. 1441, 1449 (1998); Note, *A Recommended Approach to Bail in International Extradition Cases*, 86 Mich. L. Rev. 599 (1987).

I.  **No Risk of Flight**

Prior to his arrest in the instant case, Mr. Nichols was wheel-chair bound and living in an assisted living facility ("ALF") in Hollywood, Florida for the past three

years. Mr. Nichols also suffers from full onset dementia. Prior to entering the ALF, Mr. Nichols granted durable power of attorney to a friend, Ms. Pamela Morrison. Ms. Morrison ensures that S.S.I. payments are deposited in Mr. Nichols bank account and she then makes monthly payments to the ALF from that account. Thus, before his arrest, Mr. Nichols was severely limited physically, mentally and financially. He has no known immediate family either locally or in Canada. There are simply no facts which raise concerns regarding Mr. Nichols' being a risk of flight.   .

### II. Not a Danger

Mr. Nichols is wanted for murder. However, the alleged murder happened nearly fifty years ago. There have been no allegations that Mr. Nichols has been in any trouble with the law in the intervening decades. In addition, as noted above, Mr. Nichols is 81 years old and confined to a wheelchair. And Mr. Nichols suffers from dementia and there are serious questions as to whether he has any real idea of what is transpiring from day to day. Thus, even if the nature of the charges against him create a sort of presumption of dangerousness, that presumption is completely rebutted by the reality of Mr. Nichols current circumstances and the reality that his mental and physical heath will continue to deteriorate especially if he is maintained in a prison facility. Mr. Nichols takes a regimen of medicine and it is not clear that he will have access to that same regimen while imprisoned.

### III. Special Circumstances

In addition to the effect that his physical and mental health conditions have

on Mr. Nichol's risk of flight and dangerousness to the community, they also have a profound effect on the extradition proceedings before this Court. Again, Mr. Nichols is wanted by Canadian authorities for a murder that occurred in 1975. From the extradition request, Mr. Nichols and the victim were involved in a relationship and lived together. More than forty years after the murder, DNA evidence tied Mr. Nichols to the victim. However, given that they were living together and in a romantic relationship, that fact is not surprising. Although, as elaborated below. there are some questions regarding how Canadian authorities obtained Mr. Nichols' DNA.

From the extradition request, it appears that the strongest evidence against Mr. Nichols is his alleged "confession" obtained in 2022 when Canadian authorities traveled to the ALF to interrogate Mr. Nichols. The Canadian authorities concede that at the time of their interrogation, February 2022, Mr. Nichols was already living at the ALF and already suffering from the effects of dementia. From the extradition request:

> OPP investigators were aware of this and, as such, conducted a routine assessment if NICHOLS's mental capacity during his interview on a February 1, 2022. The results of this assessment indicated to Canadian authorities that NICHOLS was verbal and able to engage in conversation, and that he demonstrated accurate recall, as, for example, when he corrected the interviewing officer regarding the name of his former rugby club and criticized the lunch he had just eaten.

DE 3 at pg 5, ¶ i. Mr. Nichols, as a wheelchair-bound resident of the ATF was in the custody of authorities during the interrogation. In addition, the laughably inept "routine assessment" falls woefully short of what is required to ensure that an

4

individual is fully aware of the nature and circumstances of the interrogation, the rights he has and whether he knowingly and voluntarily waiving those rights. Although mental deficiencies are not always dispositive of whether an individual's Fifth Amendment rights have been violated, it is an important part of that inquiry. *See United States v. Derisma*, No. 2:09-cr-64-FtM-29SPC, 2012 WL 537553 (M.D. Fla. Feb. 18, 2012).

In an international extradition proceeding under 18 U.S.C. § 3184, the government must present the magistrate judge with sufficient facts to support probable cause to arrest. *See Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000). The probable cause standards used in extradition hearings are the same as the standards used in federal preliminary proceedings. *Castro-Bobadilla v. Reno*, 826 F.Supp. 1428, 1433 (S.D. Fla. 1993); *In Re Extradition of Ernst*, No. 97 Crim.Misc.1 PG.22, 1998 WL 395267, *8 (S.D.N.Y. July 14, 1998). Under those standards, a Court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability," that Mr. Cornea committed the charged offense. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2337, 76 L. Ed. 2d 527 (1983). To meet these standards, the evidence before this Court "must provide . . . a substantial basis for determining the existence of probable, and **[a] wholly conclusory statement . . . fail[s] to meet this requirement**." *Id*. at 239, 103 S. Ct. at 2332 (emphasis added). "Sufficient

5

information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusion of others." *Id*.

Because the alleged confession of Mr. Nichols is the strongest evidence supporting the required proof of probable cause, this court must examine the validity of the interrogation and resulting confession. The unique circumstances of Mr. Nichols's case and the interrogation present unique circumstances that support the grant of a reasonable bond pending the resolution of the extradition proceedings.

## Hearing

If the Court has concerns regarding the extent of Mr. Nichols's mental and physical deficiencies, this Court should hold an evidentiary hearing. Thus, given the unique circumstances of Mr. Nichols's case, specifically his mental and physical health, undersigned counsel respectfully requests that this Court hold an evidentiary hearing to determine how the circumstances of Mr. Nichols's physical and mental health affect his request for a bond and the validity of the extradition request itself.

Opposition

Undersigned counsel has conferred with Assistant United States Attorney Lawrence LaVecchio, counsel for the Government, and notes that the Government objects to the request for any release of Mr. Nichols pending extradition proceedings.

WHEREFORE, Mr. Nichols respectfully requests that this Court impose a reasonable bond during the pendency of the extradition proceedings.

       Respectfully submitted,

       MICHAEL CARUSO
       FEDERAL PUBLIC DEFENDER

BY:  *s/Bernardo Lopez*
       Bernardo Lopez
       Assistant Federal Public Defender
       Florida Bar No. 884995
       One East Broward Boulevard, Suite 1100
       Fort Lauderdale, Florida 33301
       Tel: (954) 356-7436
       Fax: (954) 356-7556
       E-Mail: Bernardo_Lopez@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on August 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Bernardo Lopez*
Bernardo Lopez
